# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-90V
UNPUBLISHED

| | |
|---|---|
| CHARLES SHANE ROBERSON,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: August 7, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Jimmy A. Zgheib, Zgheib Sayad, P.C.,* White Plains, NY, for Petitioner.

*Kyle Edward Pozza,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On January 17, 2019, Charles Shane Roberson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine received on November 14, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to an award of damages in the amount **$129,809.24**, **representing compensation of $125,000.00 for his actual pain and suffering, plus $4,809.24 for his past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Procedural Overview

As noted above, the case was initiated in January 2019. On February 7, 2020, Respondent filed a Rule 4(c) report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 19. Accordingly, on February 11, 2020, I issued a ruling on entitlement finding Petitioner entitled to compensation for SIRVA. ECF No. 21.

The parties were unable to informally resolve the issue of damages, reaching an impasse on an appropriate award of pain and suffering, and agreed that I should make a determination on that issue. ECF Nos. 24, 26, 30. A briefing schedule was thus set on March 27, 2020. ECF No. 26. Petitioner filed a brief on April 27, 2020, requesting that I award him $160,000.00 in compensation representing his past/actual pain and suffering. ECF No. 29. Conversely, in a brief filed on June 10, 2020, Respondent recommended that I award $100,000.00 to Petitioner for his past pain and suffering. ECF No. 32. Petitioner filed a Reply brief on June 22, 2020. ECF No. 33. The parties otherwise agree an award of $4,809.24 in compensation for Petitioner's past unreimbursed expenses is appropriate, and there are no other damages components in contention beyond pain and suffering. ECF Nos. 35.

In June of this year, I informed the parties that I believed this case was appropriate for an expedited hearing and ruling, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 34. The parties agreed, and an expedited hearing took place, telephonically, on June 31, 2020. ECF Nos. 35-36; Minute Entry dated July 31, 2020.[3] I orally ruled on the pain and suffering damages component at that time, and this Decision memorializes my determination.

## II.    Legal Standard and Prior SIRVA Pain and Suffering Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining an appropriate award of pain and suffering, as well as prior SIRVA compensation in SPU cases. I fully adopt and hereby incorporate my prior discussion in sections V and VI of *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020), sections IV and V of *Rafferty v. Sec'y of Health & Human Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020), as well as sections VI(A) and VI(B) of *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

---

[3] The transcript of the July 31, 2020 Hearing in this case was not yet filed as of the date of this Decision, but is incorporated by reference herein. Jimmy Zgheib appeared on behalf of Petitioner, and Alexa Roggenkamp appeared on behalf of Respondent at the July 31, 2020.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, and all assertions made by the parties in written documents and at the expedited hearing held on July 31, 2020. Respondent's Rule 4 Report, the parties' damages briefs, and the oral argument presented by counsel at the July 31, 2020 Hearing provide detailed summaries of the medical records and affidavits filed in this case and are hereby incorporated by reference. ECF Nos. 19, 29, 32-33. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Respondent asserts that pain and suffering awards outside the Program (often arising in state court tort actions) should be considered (and has noted that they tend to be lower in magnitude). However, I find that awards issued *within* the Program (especially as set forth in reasoned decisions) are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other *reasoned* decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.[5]

---

[4] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (citing *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[5] I reject Respondent's argument, however, that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. A proffer is simply Respondent's assessment of the appropriate amount to be awarded, and a special master's approval of an award at a proffered level does not provide a reasoned instance,

3

Pursuant to my oral ruling on July 31, 2020 (which is fully adopted herein), **I find that $125,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.**

First, I note that Petitioner's pain was severe immediately, and prompted him to seek treatment only seven days after his November 14, 2017 flu vaccination. Ex. 2, Ex. 5 at 34-35. Thereafter, he underwent significant treatment for his injury for eleven months, to include: physical therapy,[6] two steroid injections,[7] two MRI scans,[8] and arthroscopic surgery (Ex. 9 at 15-16).

Second, Petitioner's medical records establish that he suffered a fairly severe injury. Although Petitioner's reported pain levels fluctuated during his treatment,[9] his injury as evidenced on MRI was particularly significant. The initial impression from Petitioner's December 27, 2017 MRI included: a moderate to high-grade mostly partial tear of the anterior half of the supraspinatus tendon; a tiny component of full-thickness tear anteriorly; the infraspinatus demonstrated minimal tendinopathy; and mild degenerative change of the AC joint. Ex. 5 at 70. Petitioner's subsequent MRI report, on May 21, 2018, demonstrated "[d]evelopment of a full thickness tear of the anterior infraspinatus tendon with mild retraction" and "mild AC joint osteoarthritis." Ex. 5 at 71. Petitioner's treatment culminated in a significant surgical procedure on July 2, 2018, consisting of

1. Diagnostic shoulder arthroscopy with extensive intraarticular shoulder debridement including biceps tenotomy, labral debridement, debridement of large, retracted supraspinatus and infraspinatus tendon tears;
2. Arthroscopic acromioplasty;

---

produced by a judicial neutral that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers provide some evidence of the kinds of awards received overall in comparable cases.

[6] Petitioner engaged in 13 physical therapy sessions prior to his surgery (Ex. 7), and 21 physical therapy sessions post-surgery (Ex. 9 at 61).

[7] Petitioner received steroid injections on the following dates: January 8, 2018 (Ex. 6 at 4) and February 19, 2018 (Ex. 6 at 26).

[8] Petitioner's MRI scans occurred on December 27, 2017 (Ex. 5 at 70) and May 21, 2018 (Ex. 5 at 71).

[9] Petitioner's pain levels as reported at his physical therapy appointments ranged as follows. December 8, 2017 to January 26, 2018: 0/10 to 3/10 (representing his at present) and 1/10 to 9/10 (representing his pain at worst); March 9, 2018 to April 11, 2018: 1/10 to 6/10 (representing pain at present) and 4/10 to 10/10 (representing his pain at worst). Ex. 7. Post-surgery Petitioner consistently reported a pain level of 6/10 at each of his physical therapy sessions until the final session where he reported pain level of 1/10. Ex. 9.

3. Arthroscopic partial distal resection (Mumford procedure); and
4. Arthroscopic margin convergence repair large supraspinatus and infraspinatus tendon tears right shoulder.

Ex. 9 at 15. Petitioner's postoperative diagnoses included a large right rotator cuff tear, an AC arthropathy, and biceps tendinopathy. *Id.*

However, Petitioner made a very recovery strong recovery subsequent to his surgical intervention, and after completing an additional 21 physical therapy sessions. On September 4, 2018, nine weeks post-surgery and almost ten months post-vaccination, Petitioner had "nearly full motion" and was found to be making good progress. Ex. 9 at 59. At his last physical therapy session on October 4, 2018, Petitioner reported a pain level of one out of ten, and was assessed as "[d]oing very well, great ROM [range of motion] and strength, minimal weakness, but great function." Ex. 9 at 61-62. At his last orthopedic appointment that same day, 12 weeks post-surgery, he was advised to discontinue formal therapy. Ex. 9 at 58. While Petitioner had some mild tenderness at the AC joint on exam, he was able to complete pushup exercises and was found to be "doing very well" with a "[g]ood outcome." Ex. 9 at 58. Petitioner sought no further treatment.

In making my determination, I have fully considered Petitioner's sworn affidavits which detail the limitations in his overall enjoyment of life, work duties, care of his pets, and exercise of daily functions attributable to his shoulder injury. Exs. 3, 19. While, Petitioner describes ongoing limitations as a result of his injury, I find that Petitioner was significantly recovered at the time of his discharge from physical therapy on October 4, 2018, as described above.

Petitioner's injury bears some similarity, but is not as severe as, the injury experienced by the petitioner in *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering and $4,931.06 in unreimbursable medical expenses). While Mr. Robeson suffered a significant injury which required extensive treatment, he ultimately made a significant recovery less than a year after his vaccination. In contrast, the *Reed* petitioner experienced what she described as a "failed surgery" and reported considerable pain nearly two and a half years subsequent to the onset of her injury. *Reed,* 2019 WL 1222925, at *15-16. In fact, although the petitioner in *Reed* was unable to establish entitlement to an award of *future* pain and suffering, she remained under the care of pain management specialists and continued to require the pain medication Tramadol to treat her injury. *Id.* at *9,11, 16. In this case, however, Mr. Roberson no longer remains under medical care for his injury. Finally, the *Reed* petitioner's physical ability to care for a young child with an ADHD autism spectrum disorder was negatively impacted by her injury – a factor not present in the instant case. *Id.* at *11, 16.

I thus find the amount awarded in *Reed* to exceed what is appropriate in this case, given such dissimilarities. Rather, this case is more in line with – although not identical to – the *Collado* and *Nute* cases (also cited by Petitioner), where lower awards were granted, under circumstances more consistent with this case. *Collado v. Sec'y of Health & Human Servs.,* No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 for actual unreimbursable expenses); *Nute v. Sec'y of Health & Human Servs.,* No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019) (awarding $125,000.00 for pain and suffering). I also find this case similar to – but more severe than – the *Cooper* case, since there the petitioner did not require surgical intervention. *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $3,642.33 for actual unreimbursable expenses).

## IV.     Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $129,809.24, representing compensation of $125,000.00 for his actual pain and suffering, plus $4,809.24 for his past unreimbursed expenses.** This amount represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[10]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.